UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>Ada County, Ada County Commissioners, Ada County Treasurer, Ada County Clerk, Ada County Recorder, Ada County Billing Services, Scott Williams, Lyn Call, and any other employees of the Ada County Billing Services; Republic Services, 9th Circuit Court of Appeals, US District of Idaho, Amanda Brailsford, David Nye, B. Lynn Winmill; and United States,<br><br>    Defendants. | Case No. 1:26-cv-00351-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

**INTRODUCTION**

In April, May, and June of this year, Plaintiff Raul Mendez conditionally filed three separate complaints and three corresponding applications to proceed *in forma pauperis* (IFP). The Court will dismiss the first two complaints because they are duplicative of the third. As for the third case, the Court will deny Mendez's IFP application because it is incomplete and, as such, does not permit the Court to determine whether he qualifies to proceed without paying the filing fee.

MEMORANDUM DECISION & ORDER - 1

Nevertheless, because Mendez invoked 28 U.S.C. § 1915 and seeks to proceed IFP, the Court will screen the complaint under § 1915(e)(2). For the reasons explained below, the Court concludes that the complaint is barred in large part by the doctrines of res judicata or immunity. And beyond that, the complaint fails to state any plausible claim for relief. The Court will therefore dismiss the third-filed complaint as well.

The Court will, however, grant Mendez leave to amend because he may be able to allege a plausible Fifth Amendment takings claim based on the fact that Ada County has obtained a tax deed for his home—which has an assessed value of around $370,000—based on an underlying debt of approximately $550. *See generally Pung v. Isabella Cnty.*, 146 S. Ct. 1964, 1972-73 (2026). All other claims will be dismissed without leave to amend.

## BACKGROUND

Over the past seven years, Plaintiff Raul Mendez has filed seven lawsuits in this District challenging Ada County's assessment of mandatory residential trash-collection fees.[1] He has also filed multiple additional actions over the years, on a

---

[1] The first case was filed in 2019; the second in 2021; the third in 2022; the fourth in 2025; and the fifth, sixth, and seventh in 2026. *See Mendez v. Ada County*, No. 19-cv-00301-BLW; *Mendez v. Ada County*, 21-cv-00447-BLW; *Mendez v. Ada County*, No. 22-cv-00493-BLW; *Mendez v. Ada County*, No. 1:25-cv-00297-AKB; *Mendez v. Ada County*, No. 26-cv-00254-BLW; *Mendez v. Ada County*, No. 26-cv-00324-BLW; and *Mendez v. Ada County*, No. 26-cv-00351-BLW.

variety of topics over the years. [2] *See Compl.,* Dkt. 2, at 7-9 (listing some of these

---

[2] Additional cases—not including the seven trash-fee cases—include the following.

| Subject or Lead Defendant | Case No. | General Description |
| --- | --- | --- |
| St. Alphonsus | 1:12-cv-00026-EJL-CWD | Employment discrimination action |
| State of Idaho | 1:18-cv-00063-DCN | Attempted removal; traffic ticket |
| Community Health Clinic | 1:16-cv-00425-DCN | Employment discrimination action |
| | 1:21-cv-00448-DCN | Second action |
| | 1:25-cv-00295-BLW | Third action |
| Food Stamps | 1:19-cv-00426-DCN | Mendez attempted to represent his mother in an action regarding food stamp benefits |
| | 2:26-cv-00456-DCN | Second food stamp action |
| Criminal / Removal | 1:18-cv-00063-DCN | Attempted removal; state criminal matter |
| City of Boise Sewer Fees | 1:19-cv-00049-BLW | First sewer-fee action |
| | 1:20-cv-00061-BLW | Second sewer-fee action |
| | 1:21-cv-00446-DCN | Third sewer-fee action |
| | 1:25-cv-00296-AKB | Fourth sewer-fee action |
| | 1:26-cv-00252-AKB | Fifth sewer-fee action |
| Moonridge HOA | 1:19-cv-00092-DCN | First HOA action |
| | 1:19-cv-00507-DCN | Second HOA action |
| | 1:25-cv-00294-AKB | Third HOA action |
| | 1:26-cv-00253-AKB | Fourth HOA action |
| Sony / PlayStation | 1:20-cv-00588-DCN | First Sony action |
| | 1:23-cv-00333-DCN | Second Sony action |
| | 1:25-cv-00293-BLW | Third Sony action |
| Ada Community Libraries | 1:20-cv-00589-DCN | Libraries dispute |
| United States Postal Service | 1:24-cv-00434-DCN | Removal by USPS; Postal Service action |

In an earlier decision, in the context of warning Mendez that he might be declared a vexatious litigant, Judge Nye recounted Mendez's litigation history as of March 2022. *See Mendez v. City of Boise*, No. 1:21-cv-00446-DCN, 2022 WL 83646, at *3-9 (D. Idaho Mar. 21, 2022). Despite that warning, Mendez has continued filing duplicative cases. On two occasions after that warning was issued, Mendez filed multiple lawsuits on a single day—seeking to relitigate issues that had already been decided. Specifically, he filed four lawsuits on June 6, 2025 (Case Nos. 25-cv-293, 25-cv-294, 25-cv-295, and 25-cv-296) and three on April 27, 2026 (Case Nos. 26-cv-252, 26-cv-253, and 26-cv-254).

MEMORANDUM DECISION & ORDER - 3

earlier actions). Mendez's central allegation in each lawsuit related to trash-collection fees is that Ada County has wrongly assessed these fees on his residential property because he spends most of his time at his mother's house as her caregiver and doesn't generate trash at his house.

To date, Mendez's challenges have been unsuccessful. He filed his first case related to trash-collection fees in 2019, and this Court dismissed all claims. The Ninth Circuit affirmed. Mendez then filed two additional actions in this District—one in 2021 and another in 2022. This Court dismissed both cases on *res judicata* grounds concluding that they repackaged the same underlying dispute. The Ninth Circuit again affirmed.

In 2025, Mendez filed a fourth action arising from the same dispute, this time adding five new defendants: (1) the United States of America; (2) the Ninth Circuit Court of Appeals; (3) the District of Idaho; (4) Judge David Nye; and (5) the undersigned judge. That action was assigned to Judge Brailsford. In November 2025, Judge Brailsford dismissed Mendez's 2025 action, concluding that the claims against the Ada County defendants were barred by the doctrine of res judicata and that the other defendants were immune from suit. Mendez did not appeal that dismissal. Instead, in the spring and early summer of 2026, Mendez sought to file the three lawsuits mentioned above: (1) Case No. 26-cv-254-BLW; (2) Case No. 26-cv-324-BLW; and (3) Case No. 26-cv-351-BLW. As with his

MEMORANDUM DECISION & ORDER - 4

earlier actions, Mendez continues to challenge Ada County's trash-collection fees, and he has now added Judge Brailsford to the list of defendants. In addition to his ongoing complaints about the County defendants, Mendez says the other defendants have conspired with the County defendants to deprive him of constitutional and other rights.

Meanwhile—as Mendez continued filing complaints in this Court—Ada County has been certifying Mendez's unpaid trash-collection fees to the property tax roll every year. And things have now reached the point where Ada County has obtained a tax deed for Mendez's home. *See generally Compl.,* Dkt. 2, ¶¶ 73-74. The home has an assessed value of around $370,100, and the tax deed is based on Mendez's failure to pay $555.34 in fees.[3] *See Feb. 2, Notice of Pending Issue of Tax Deed*, Dkt. 4-1, at ECF 76 (summing the late fees and costs at $555.34); *Ada County Consolidated  Property Tax Bill*, Dkt. 4-1, at ECF 18 of 76 (reflecting a then "current total assessed value" of $370,100 for the home).

According to Idaho statutory law, once the tax deed has issued, Mendez has 14 months to redeem the home—unless that statutory right of redemption is extinguished sooner because the county enters into a contract of sale or transfers

---

[3] The notice indicates that the "Tax, Certification, & Fees" amount to $180.73. The remainder is made up of a late charge ($3.62); interest ($68.24); "litigation guarantee fees" ($300), and maintenance fees ($2.75).

the property by county deed. *See* Idaho Code § 63-1007. Thus, if Mendez does not exercise his statutory right of redemption before a sale or deed, he stands to lose his home for good. If, however, his home is eventually sold for more than the amount necessary to satisfy the delinquency and the costs, the County may not retain the surplus proceeds for itself. *See generally Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023) (holding that a county could not keep a $25,000 surplus for itself after selling plaintiff's home for $40,000 to satisfy a $15,000 tax bill).

Despite having repeatedly lost on the issue of whether the underlying trash fees are owing and whether those past due fees may be certified to the property tax roll, it does not appear that Mendez has any intention of paying the outstanding fees added to the property tax roll or seeking to redeem his property. Instead, he says he "will *continue* with filing his claims with the understanding that judges are acting criminally and accordingly not performing a government function in accordance with the law." *Compl.*, Dkt. 2, at 2 (emphasis in original).

## ANALYSIS

Before screening Mendez's complaint, the Court will address three threshold issues: (1) whether recusal is required; (2) whether Mendez may maintain three substantially overlapping actions arising from the same underlying controversy; and (3) whether Mendez's IFP application should be granted.

MEMORANDUM DECISION & ORDER - 6

## A.    Recusal Requirements

Beginning with the recusal issue, Mendez has named all three Article III judges serving in the District of Idaho as defendants. He alleges that each judge joined Ada County, the United States, the Ninth Circuit, and other defendants in a conspiracy to deprive Mendez of his constitutional rights by issuing adverse judicial rulings. He also alleges that the judges acted with racial animus. These allegations arise exclusively from judicial acts undertaken in Mendez's prior lawsuits.

Under 28 U.S.C. § 455(a), federal judges must disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455, however, "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). Rather, the question is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Id.*

The mere fact that a litigant sues or threatens to sue the presiding judge does not require recusal. Were it otherwise, any litigant could obtain a different judge simply by naming the assigned judge as a defendant. The Ninth Circuit has rejected such a rule. In *United States v. Studley*, 783 F.2d 934, 939–40 (9th Cir.

MEMORANDUM DECISION & ORDER - 7

1986), the court held that a district judge properly declined to recuse himself despite the defendant having filed a lawsuit against him before sentencing. Other courts have likewise concluded that judges need not recuse themselves merely because they have been named as defendants in meritless actions arising from their judicial rulings. *See, e.g., Azubuko v. Royal,* 443 F.3d 302, 304 (3d Cir. 2006).

That principle applies here. Plaintiff has not sued only the undersigned; he has sued every Article III district judge in this District. And, as noted above, his allegations against each judge stem from adverse judicial rulings. Such allegations do not provide an objectively reasonable basis for questioning any judge's impartiality. Instead, they reflect Mendez's disagreement with the outcome of his prior cases. Disagreement with a judge's rulings is not a basis for recusal under § 455.

Moreover, even if Mendez's decision to sue every Article III judge in this District were sufficient to trigger § 455, the rule of necessity would permit the Court to proceed. Under that doctrine, "'where all are disqualified, none are disqualified.'" *Ignacio v. Judges of the U.S. Court of Appeals for the Ninth Circuit,* 453 F.3d 1160, 1164–65 (9th Cir. 2006) (citation omitted). The rule prevents litigants from disabling an entire court by naming all of its judges as defendants.

For all these reasons, the Court concludes that recusal is neither required nor appropriate.

**B.      Duplicative Lawsuits**

The Court next addresses Mendez's decision to file three substantially similar lawsuits arising from the same underlying controversy. As noted above, Mendez submitted three complaints over approximately five weeks. In each successive complaint, Mendez would build on the preceding complaint—mainly by updating his allegations to account for the latest events in the ongoing tax-deed proceedings. Otherwise, he largely retained the same factual narrative, defendants and legal theories. The third-filed complaint is the most complete and current statement of Plaintiff's allegations.

Federal district courts possess the inherent authority to manage their dockets "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). That authority logically includes the ability to dismiss duplicative lawsuits. Further, the Ninth Circuit has recognized that "plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir. 2007) (citation and internal quotation marks omitted), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). In determining whether actions are duplicative, courts examine whether the causes of action, the relief sought, the parties or their privies, and the transactional nucleus of facts substantially overlap.

MEMORANDUM DECISION & ORDER - 9

*Id.* at 689.

Having reviewed Mendez's three complaints, the Court concludes that Case Nos. 1:26-cv-00254 and 1:26-cv-00324 are duplicative of this action. Because the third-filed complaint contains the most complete statement of Mendez' allegations, requiring him to proceed, if at all, in a single action will conserve judicial resources, eliminate duplicative litigation, and avoid the possibility of inconsistent rulings. Accordingly, the Court will dismiss Case Nos. 1:26-cv-00254-BLW and 1:26-cv-00324-BLW as duplicative. [4]  If Mendez seeks to proceed with his litigation, he shall do so in the above-captioned case—that is, Case No. 1:26-cv-00351-BLW.

## C.   IFP Application

The Court will next turn to the IFP application, which will be denied without prejudice.

Under 28 U.S.C. § 1915(a)(1), a court may authorize a litigant to proceed without prepaying the filing fee upon submission of an affidavit demonstrating that the litigant is unable to pay such fees. Although a litigant "need not be absolutely destitute" to qualify for in forma pauperis status, the affidavit must provide

---

[4] The Court will separately enter dismissal orders in Case Nos. 1:26-cv-00254-BLW and 1:26-cv-00324-BLW.

MEMORANDUM DECISION & ORDER - 10

sufficient financial information to permit the Court to determine whether paying the filing fee would deprive the applicant of life's necessities. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948); *Escobedo v. Applebees,* 787 F.3d 1226, 1234–35 (9th Cir. 2015). Here, Mendez has not met that burden because his application is both incomplete and internally inconsistent.

One problem is that Mendez's disclosures regarding his assets are unclear. He lists a residence with a value of $110,000. Yet, the documents submitted with his complaint indicate that Ada County recently assessed that same property at approximately $370,100. *See Ada County Consolidated  Property Tax Bill*, Dkt. 4-1, at ECF 18 of 76 (reflecting a then "current total assessed value" of $370,100 for the home). The record further indicates that Ada County has since obtained a tax deed to the property. *See Compl.*, Dkt. 2, at 3 (alleging that Ada County "issued a tax deed . . . ."); *see also id.* at 12, 29, 34, 36. Given this development, it is unclear whether Mendez presently retains an ownership interest in the property that should be disclosed on the application and, if so, how Mendez arrived at the reported value of $110,000.

The application also omits other information necessary to evaluate Mendez's financial circumstances. For example, Mendez submitted documentation indicating that he qualified for Medicaid (which likely explains why he doesn't report medical expenses), but he does not disclose whether he receives any other cash or

MEMORANDUM DECISION & ORDER - 11

non-cash public benefits. He identifies his employer as "Star Cleaning," but does not provide the business address or complete employment history requested by the form. In terms of financial accounts, he identifies a checking account at Chase Bank, but other documents submitted in this action suggest he may maintain an account at Banner Bank. *See Req. for Judicial Notice,* Dkt. 4-1, Ex. 5 thereto (showing a check drawn on a Banner Bank account in November 2020). Plaintiff also failed to provide the registration number for his vehicle. These are a few examples of how the application is incomplete. More broadly, however, Mendez left numerous portions of the application blank—including several categories of ordinary monthly living expenses, such as food—rather than entering a dollar amount or indicating that the amount is zero or not applicable.

Notably, the application itself clearly and explicitly instructs applicants to complete every question and not leave blanks. Instead, if the answer to a particular question is "0," "none," or "not applicable," the applicant is directed to so indicate. *See IFP App Form,* Dkt. 1, at 1. Mendez's failure to complete the application in accordance with those instructions prevents the Court from accurately assessing his financial circumstances.

Next, the Court is not persuaded by Mendez's argument that it must grant him leave to proceed in forma pauperis simply because the Idaho Department of Health and Welfare has determined that he qualifies for Medicaid. The two

MEMORANDUM DECISION & ORDER - 12

determinations are governed by different statutes and serve different purposes. Medicaid eligibility is determined by state agencies administering federal and state public-benefit programs under criteria established by the Medicaid Act. By contrast, 28 U.S.C. § 1915 requires a federal court to independently determine whether a litigant is "unable to pay" the filing fee. Nothing in § 1915 provides that a state agency's determination regarding Medicaid eligibility is binding on a federal court, and Mendez cites no authority so holding. The Court gives due consideration to Mendez's Medicaid eligibility as one piece of evidence bearing on his financial circumstances, but it remains obligated to independently assess whether Mendez has carried his burden under § 1915. Because the current application contains material omissions and inconsistencies, the Court cannot make that determination.

None of these deficiencies necessarily means that Mendez is financially able to pay the filing fee. Indeed, Plaintiff ultimately may qualify to proceed in forma pauperis. But the Court cannot make that determination based upon an application that is incomplete and contains material inconsistencies regarding Plaintiff's assets and financial circumstances. Accordingly, the Court will deny the application without prejudice. If Plaintiff wishes to proceed with this action, he may either pay the filing fee or submit a renewed application that completely and accurately discloses his financial information. Any renewed application should complete every applicable line item on the form. If a category does not apply, or the amount

MEMORANDUM DECISION & ORDER - 13

is zero, Plaintiff should so indicate rather than leaving the space blank. Likewise, Plaintiff should disclose any public assistance he receives, including any non-cash benefits in addition to Medicaid.

## D.    Screening Order

Because Plaintiff seeks to proceed in forma pauperis, the Court will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Under that statute, the Court must dismiss a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

Having reviewed Mendez's complaint, the Court concludes that every claim asserted in this action is barred by the doctrine of res judicata or judicial immunity or both. Moreover, because Mendez has repeatedly litigated these issues over the course of seven separate lawsuits, amendment ordinarily would be futile. The Court will, however, permit Mendez one final opportunity to amend because recent developments involving Ada County's acquisition of a tax deed to his residence present the possibility of a narrow Fifth Amendment claim Mendez has not previously asserted. That limited exception is discussed below.

### 1.  Mendez's Claims Are Barred by Res Judicata or Judicial Immunity.

As discussed above, Judge Brailsford dismissed Mendez's 2025 lawsuit after concluding that his claims against the Ada County defendants were barred by the

**MEMORANDUM DECISION & ORDER - 14**

doctrine of res judicata and that Mendez's claims against the remaining governmental and judicial defendants were independently barred. Mendez did not appeal that decision. Instead, he filed the present action.

The problem is that the current action is mostly a repeat of the 2025 action— meaning that the claims are barred by the doctrine of res judicata. The easiest way to understand this is to compare the claims asserted in the 2025 complaint with those asserted in this complaint. Here is a side-by-side comparison:

| | Claim Asserted in 2025 Action | | Claim Asserted 2026 Action |
|---|---|---|---|
| A | Equal Protection | A | Equal Protection |
| B | Due Process | B | Due Process |
| C | Takings | C | Takings |
| D | "Liberty in Not Being Defamed" | D | "Liberty in Not Being Defamed" |
| E | Violation of Separation of Powers | E | Violation of Separation of Powers |
| F | Conspiracy to Deprive Mendez of his Civil Rights | F | Conspiracy to Deprive Mendez of his Civil Rights |
| G | Bivens Claim | G | Bivens Claim |
| H | Violation of Title II/VI of the Civil Rights Act | H | Violation of Title II/VI of the Civil Rights Act |
| I | RICO | I | RICO |
| J | Federal Tort Claim Act | J | Federal Tort Claims Act |
| K | First Amendment | K | First Amendment |
| L | Intentional Infliction of Emotional Distress | L | Intentional Infliction of Emotional Distress |
| M | Defamation | M | Defamation |
| N | Fraud | N | Fraud |
| O | Breach of Contract | O | Breach of Contract |
| P | Violation of the Idaho Human Rights Act | P | Violation of the Idaho Human Rights Act |
| Q | Conspiracy to Deprive Rights Under Idaho Tort Law | Q | Conspiracy to Deprive Rights Under Idaho Tort Law |
| R | Abuse of Process Under Idaho Tort Law | R | Abuse of Process Under Idaho Tort Law |
| | | S | Violations of 42 USC 1981 |
| | | T | Idaho Tort Claims Act |

**MEMORANDUM DECISION & ORDER - 15**

As the chart demonstrates, nearly every claim asserted in the present complaint is identical—or materially indistinguishable—from a claim asserted in the 2025 action. Although Mendez has added two newly labeled claims (Claim S, "Violations of 42 USC 1981;" and Claim T, "Idaho Tort Claims Act"), those claims arise from the same underlying controversy that has formed the basis of every one of Mendez's lawsuits since 2019: Ada County's assessment, collection, and enforcement of mandatory residential trash-collection fees. The complaint continues to allege that the trash fees are unlawful, that the resulting certifications to the property tax roll are invalid, that the tax liens are unlawful, and that various governmental entities and judges have conspired to deprive Mendez of his constitutional rights. These allegations arise from the same transactional nucleus of facts that has already been litigated repeatedly in this Court.

The fact that Mendez has updated his factual allegations to account for more recent events—including the issuance of a tax deed—does not allow him to revive the underlying dispute about the propriety of the trash-collection fees or the ongoing certification of those delinquent fees to the property tax rolls. *See generally Howard v. City of Coos Bay,* 871 F.3d 1032, 1039, 1040-41 (9th Cir. 2017). Nor does relabeling legal theories or adding additional causes of action avoid the preclusive effect of prior judgments. Claims arising from the same

nucleus of operative facts that either were or could have been asserted in the earlier litigation are barred by the doctrine of res judicata.

Mendez also cannot avoid dismissal by naming Judge Brailsford as an additional defendant. The claims against her arise from judicial acts undertaken while presiding over his 2025 lawsuit. Like the other judicial defendants, Judge Brailsford is entitled to absolute judicial immunity for acts performed in her judicial capacity. *See Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) ("Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts.").

Similarly, Mendez's contention that Judge Brailsford should have recused herself in the 2025 lawsuit based on the Ninth Circuit's decision in *In re Creech*, 119 F.4th 1114 (9th Cir. 2024) does not provide a basis for this lawsuit. *Creech* was decided in October 2024. Mendez filed his 2025 lawsuit afterward, in June 2025. He was aware that the lawsuit had been assigned to Judge Brailsford; indeed, in November 2025, he filed a motion urging Judge Brailsford to issue a prompt decision due to impending tax-deed proceedings. And when Judge Brailsford dismissed his action a few weeks later, he did not appeal. If Mendez believed Judge Brailsford should have recused herself in light of *Creech*, he should have raised the issue in the 2025 lawsuit or its appeal. He did neither.

For all these reasons, the Court concludes that every claim asserted in the

complaint is barred by the doctrine of res judicata, judicial immunity, or both.

## 2. Leave to Amend Would Ordinarily Be Futile.

Ordinarily, that conclusion would end the matter. This is Mendez's seventh lawsuit challenging Ada County's mandatory residential trash-collection fees. Over the course of those seven lawsuits, Mendez has repeatedly attempted to relitigate the same underlying dispute despite repeated final judgments rejecting his claims. For that reason, the Court ordinarily would dismiss this entire action without leave to amend. Permitting Mendez to replead claims that have already been rejected numerous times would serve no purpose and would be futile.

## 3. One Narrow Exception Warrants Limited Leave to Amend.

One recent factual development, however, causes the Court to pause before concluding that amendment would necessarily be futile. After Judge Brailsford dismissed the 2025 complaint, Ada County obtained a tax deed to his residence after certifying approximately $555 in unpaid trash-related charges, fees, and costs to the property tax roll. According to the materials submitted with the complaint, the residence has an assessed value of approximately $370,100. Although Mendez has a statutory right of redemption, that right may be extinguished if the County disposes of the property before redemption occurs. Mendez also alleges that the County did not comply with various statutory procedures in obtaining the tax deed.

Under these facts, Mendez may be able to allege a viable Fifth Amendment

takings claim. To be clear, the present complaint does no such thing. Instead, Mendez's latest complaint—like all his others—continues to challenge the legality of the underlying trash fees and the certifications to the property tax roll. Those allegations remain part of the same underlying dispute that has already been litigated repeatedly and therefore are barred for the reasons discussed above.

The Court cannot conclude, however, that amendment would necessarily be futile. Although Plaintiff may not relitigate whether the underlying trash fees were lawfully imposed or certified to the property tax roll, he may be able to challenge the constitutionality of Ada County's chosen method of collecting that debt. In *Pung v. Isabella Cnty.*, 146 S. Ct. 1964, 1972-73 (2026), the Supreme Court declined to resolve whether a county's method of enforcing a tax delinquency may itself present a distinct Takings Clause question separate from the validity of the underlying tax obligation. Rather than deciding those issues, the *Pung* Court remanded for further proceedings, leaving unresolved whether certain tax-collection procedures may violate the Fifth Amendment. Those unresolved questions take on particular significance here, where Plaintiff alleges that Ada County has acquired a tax deed to residential property worth approximately $370,000 based upon a delinquency of only a few hundred dollars. Stated differently, the possible constitutional question is not whether Ada County was entitled to collect the delinquent fees. Rather, it is whether the County's decision to

MEMORANDUM DECISION & ORDER - 19

obtain a tax deed to residential property worth approximately $370,000 to satisfy a debt of approximately $555—rather than employing some less drastic means of collection—may give rise to a distinct Fifth Amendment claim.

Accordingly, although Mendez's existing takings allegations are barred along with the remainder of his complaint, the Court cannot conclude it would be futile for Plaintiff to attempt to plead this narrow and distinct constitutional theory. For that reason, Mendez will be given leave to amend his complaint. The Court expresses no opinion as to whether Plaintiff can ultimately state a plausible Fifth Amendment claim or prevail on such a claim. The Court concludes only that, at this preliminary screening stage, it cannot say amendment would necessarily be futile.

### 4.  Scope of Leave to Amend.

Mendez should be aware, however, that the leave granted by this Order is exceedingly narrow. If he elects to file an amended complaint, he may do so only for the purpose of attempting to assert a Fifth Amendment claim arising from Ada County's acquisition of rights in his residence through the tax-deed process. Nothing in this Order authorizes Mendez to relitigate whether Ada County lawfully imposed mandatory trash-collection fees, lawfully certified those charges to the property tax roll, or prevailed in his prior lawsuits. Nor may Mendez reassert his conspiracy claims, claims against defendants who are immune from suit, or any

other claims previously resolved by final judgment.

Mendez should be aware that if he chooses to file an amended complaint that merely repackages claims previously rejected by this Court, the amended complaint will be subject to dismissal with prejudice. ***Further, Mendez should heed this warning: If he continues his efforts to relitigate matters that have been conclusively resolved by prior judgments, the Court will deem him a vexatious litigant and enter a pre-filing review order. Mendez has been warned that this could happen, yet he ignored the warning—demonstrating that the warning did not serve its purpose. See n. 2, supra. Accordingly, if he persists in filing duplicative lawsuits, the Court will declare him a vexatious litigant and enter a pre-filing review order.***

## E.     Pending Motions

Finally, the Court will also deny, without prejudice, Mendez's other pending motions in this matter. Mendez is free to renew these motions if he: (1) submits an amended complaint consistent with the directives above; *and* (2) either pays the filing fee or submits a *complete* IFP application, which the Court grants.

## ORDER

**IT IS ORDERED that:**

1.     Plaintiff's Application to Proceed *In Forma Pauperis* (Dkt. 1) is

**DENIED WITHOUT PREJUDICE.** If Plaintiff wishes to proceed

MEMORANDUM DECISION & ORDER - 21

with this lawsuit, he shall file a fully completed IFP application within 21 days of this Order.

2.   Plaintiff's complaint is **DISMISSED WITH LEAVE TO AMEND,** as explained above. If Plaintiff wishes to file an amended complaint—consistent with the instructions above—he may do so within 21 days of this Order. Any amended complaint must: (a) *not* seek to relitigate the validity of the underlying trash-collection debt; (b) focus entirely on Ada County's collection method (the tax deed); and (c) seek to allege a procedural takings claim under *Pung v. Isabella County*, as discussed above.

3.   Plaintiff's Motion for a Preliminary Injunction (Dk. 3) is **DENIED WITHOUT PREJUDICE.**

4.   Plaintiff's Motion for Judicial Notice (Dkt. 4) is **DENIED WITHOUT PREJUDICE.**



DATED: August 4, 2026

B. Lynn Winmill
U.S. District Court Judge